# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| JAMES T. TURNER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 209-013 |
| | * | |
| JOHN T. JONES and CITY OF | * | |
| BAXLEY, | * | |
| | * | |
| Defendants. | * | |

## ORDER

Plaintiff James T. Turner filed this civil action against Defendants John T. Jones and the City of Baxley, Georgia, asserting claims for false arrest and excessive force under 42 U.S.C. § 1983,[1] as well as state-law claims for wrongful arrest, assault, and battery. Presently before this Court is Defendants' motion for partial[2] summary judgment on Plaintiff's

---

[1] 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

[2] Although not styled as a motion for *partial* summary judgment, Defendants' motion asserts no basis for the summary adjudication of Plaintiff's state-law claims. (See Dkt. No. 16.)

federal-law claims under § 1983. (Dkt. No. 16.) For the reasons that follow, Defendants' motion for partial summary judgment is **GRANTED**. (Dkt. No. 16.) Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, and those claims are **DISMISSED without prejudice.**

## BACKGROUND

On June 6, 2007, Lieutenant John T. Jones of the Baxley Police Department initiated a traffic stop after allegedly observing Plaintiff's vehicle make an improper lane change.[3] After examining Plaintiff's driver's license and vehicle registration, Jones issued Plaintiff a traffic citation and informed him that he had failed to use his turn signal before changing lanes. Throughout the traffic stop, Plaintiff was admittedly disrespectful toward Lieutenant Jones and facetiously observed that he had often witnessed police officers "not using their turn signals." (Turner Dep. 34, 44.) As Jones started to return to his vehicle, Plaintiff asked the officer whether he was going to return Plaintiff's driver's license. Jones informed Plaintiff "in a sarcastic tone" that he was going to

---

[3] In his Response to Defendants' Rule 56.1 Statement of Material Facts, Plaintiff denies making the improper lane change. (Dkt. No. 18 Ex. 1.) In his deposition, however, Plaintiff admitted to discovering that his turn signal was inoperative when he inspected his lights the day after the traffic stop. (Turner Dep. 39.)

keep the license, to which Plaintiff replied, also sarcastically, that Lieutenant Jones "was about the nicest police officer [he] ever met." (Id. at 34.)

Jones turned and started walking back toward his police cruiser. Plaintiff then exited his own vehicle and followed behind Lieutenant Jones for several feet, carrying a pen and the traffic citation in his hand. At some point, Plaintiff asked Lieutenant Jones for his name. Jones, whose back was turned toward Plaintiff at all times, did not answer. Jones reached the door of his squad car about the same time that Plaintiff reached the front driver's side of the vehicle. As the officer started to open the car door, Plaintiff leaned over the hood of the police car so that he would be in a position to write Jones's name on the citation. Seconds later, Jones grabbed Plaintiff's arms, pushed him against the hood of the police car, and placed him in handcuffs.

Plaintiff was arrested and transported to the Appling County Detention Center, where Jones issued Plaintiff a citation for misdemeanor obstruction pursuant to O.C.G.A. § 16-10-24. (Dkt. No. 18 Ex. 2.) That statute provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." Jones deposed that he believed the arrest and citation were warranted because Plaintiff hindered him from

3

completing his duties and "posed a threat . . . by approaching a law enforcement officer from the rear." (Jones Dep. 20, 32.)

On February 13, 2009, Plaintiff filed suit against Jones and the City of Baxley. In addition to asserting various state-law claims, Plaintiff seeks damages under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. Plaintiff alleges that his arrest was unlawful and that Jones used excessive force when he placed Plaintiff in handcuffs. Plaintiff claims he had to be treated for serious medical injuries subsequent to the arrest, and that he will need surgery to repair his left shoulder. Plaintiff further alleges that the City of Baxley is liable for Jones's alleged unconstitutional conduct. Plaintiff claims that the city either maintained a policy that authorized the use of force without legal cause or that it failed to adopt a policy prohibiting the use of force except under appropriate circumstances. Plaintiff also claims that the city continued to employ Jones as a police officer despite knowledge of prior misconduct. Jones and the City of Baxley now move for partial summary judgment on Plaintiff's federal-law claims under § 1983. (Dkt. No. 16.)

AO 72A
(Rev. 8/82)

**DISCUSSION**

I. STANDARD OF REVIEW

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

II. PLAINTIFF'S § 1983 CLAIMS AGAINST LIEUTENANT JONES

Defendants argue that Jones is entitled to summary judgment on the basis of qualified immunity. Qualified immunity protects government officials from civil liability under § 1983, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine allows government officials "to carry out their

5

discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

An official asserting the affirmative defense of qualified immunity must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004). A police officer performs a discretionary function when the acts he undertakes are "of a type that [fall] within the [officer's] job responsibilities." Id. at 1265. Because making an arrest falls within the official responsibilities of an on-duty law enforcement officer, Lieutenant Jones was acting within the scope of his discretionary authority when he handcuffed and detained Plaintiff. Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004); see also Burdeshaw v. Snell, 365 F. Supp. 2d 1194, 1198 (M.D. Ala. 2005) ("An on-duty police officer making an arrest is performing a discretionary function.").

Once a defendant establishes that he was acting within the scope of his discretionary authority, a court is obliged to grant qualified immunity unless the plaintiff can demonstrate: (1) that the facts, when viewed in a light most favorable to the

6

AO 72A
(Rev. 8/82)

plaintiff, establish a constitutional violation; and (2) that the right violated was "clearly established" at the time of the alleged incident. McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009). A court may undertake this two-pronged analysis in whatever order it deems appropriate for the case. Pearson v. Callahan, 129 S. Ct. 808, 821 (2009). However, if the facts alleged do not establish the violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001).

### A. False Arrest

Plaintiff contends that there was "no reason whatsoever" for his June 6, 2007 arrest. (Resp. 8.) There is no question that an arrest without probable cause violates the Fourth Amendment and can form the basis of a claim for damages under § 1983. Brown v. City of Huntsville, --- F.3d ---, 2010 WL 2243877, at *5 & n.15 (11th Cir. June 7, 2010). Probable cause to arrest exists if the facts and circumstances within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed. Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997). When determining whether an official is entitled to qualified immunity, however, the issue is not *actual*

AO 72A
(Rev. 8/82)

probable cause, but only *arguable* probable cause. <u>Montoute v. Carr</u>, 114 F.3d 181, 184 (11th Cir. 1997). Arguable probable cause to arrest exists if objectively reasonable officers in the same circumstances and possessing the same knowledge as the officer effectuating the arrest could have believed that probable cause existed. <u>Case v. Eslinger</u>, 555 F.3d 1317, 1327 (11th Cir. 2009). Because arguable probable cause looks to whether the arresting officer's actions were objectively reasonable, the officer's underlying intent or motivation is irrelevant. <u>Lee</u>, 284 F.3d at 1195. This permissive standard acknowledges that "law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." <u>Von Stein v. Brescher</u>, 904 F.2d 572, 579 (11th Cir. 1990); <u>see</u> <u>also</u> <u>Skop v. City of Atlanta</u>, 485 F.3d 1130, 1137 (11th Cir. 2007) ("We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to be supported by probable cause."). Thus, "[a] defendant need only demonstrate that arguable probable cause existed in order to be protected by qualified immunity." <u>Rushing v. Parker</u>, 599 F.3d 1263, 1266 (11th Cir. 2010).

Whether an arresting officer possesses arguable probable cause depends on the elements of the alleged offense and the

AO 72A
(Rev. 8/82)

operative fact pattern. Skop, 485 F.3d at 1137. Under Georgia law, a person commits the offense of misdemeanor obstruction if he "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties." O.C.G.A. § 16-10-24(a). Georgia's misdemeanor obstruction statute "was made purposefully broad to cover actions which might not otherwise be unlawful, but which obstruct[] or hinder[] law enforcement in carrying out their duties." Carter v. State, 188 Ga. App. 464, 464, 373 S.E.2d 277 (1988). Examples of conduct that might satisfy the obstruction element of O.C.G.A. § 16-10-24(a) include "[a]rgument, flight, stubborn obstinance, and lying." Pinchon v. State, 237 Ga. App. 675, 675, 516 S.E.2d 537 (1999). Violence or forcible resistance is not an essential element of the offense. Id.; see also Stryker v. State, 296 Ga. App. 493, 495, 677 S.E.2d 680 (2009). All that is required is "some form of knowing and willful opposition to the officer." Weidmann v. State, 222 Ga. App. 796, 797, 476 S.E.2d 18 (1996).

Here, the evidence viewed in the light most favorable to Plaintiff suggests that Lieutenant Jones had at least arguable probable cause to arrest Plaintiff for obstruction. After Lieutenant Jones issued Plaintiff a citation for an improper lane change and started back toward his vehicle, Plaintiff exited his own vehicle, followed behind the officer, and leaned

9

over the front driver's side of the police car. Plaintiff's willful acts arguably hindered Jones's efforts toward an orderly conclusion of a routine traffic stop. Accord Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1107 (8th Cir. 2004) (applying Iowa obstruction law). While it may be true that "asking for an officer's badge number" or name would not ordinarily constitute obstruction, see Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006) (applying Florida obstruction law), Plaintiff's willful act of positioning himself over the front of Jones's police car after an admittedly acrimonious exchange could have caused a reasonable officer in the same circumstances and possessing the same knowledge as Jones to believe that probable cause existed to arrest Plaintiff for misdemeanor obstruction. See Case, 555 F.3d at 1327. Because the Court finds that there was arguable probable cause to arrest Plaintiff for misdemeanor obstruction, Jones is entitled to qualified immunity on Plaintiff's §1983 claim for false arrest. See Lee, 284 F.3d at 1195 ("*Arguable* probable cause . . . is all that is required for qualified immunity to be applicable to an arresting officer." (internal quotation marks omitted)).

### B. Excessive Force

Plaintiff also alleges that Jones violated his Fourth Amendment rights by using excessive force during the arrest. While it is true that "even *de minimus* force will violate the

10

Fourth Amendment if the officer is not entitled to arrest or detain the subject," Reese v. Herbert, 527 F.3d 1253, 1272 (11th Cir. 2008) (internal quotation marks omitted), this Court has already found that arguable probable cause existed to arrest Plaintiff. Thus, the relevant inquiry here is whether Jones used too much force in effecting that arrest. Brown, 2010 WL 2243877, at *7 n.21.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee, 284 F.3d at 1197 (citing Graham v. Connor, 490 U.S. 386, 394-95 (1989)). It is well established, however, that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. The Eleventh Circuit recognizes, moreover, that the typical arrest may even involve some force and injury. Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002). "For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls." Brown, 2010 WL 2243877, at *10.

To determine whether the amount of force used by a police officer was appropriate, a court must ask whether "an objectively reasonable officer in the same situation could have believed the use of force was not excessive." Id. at *7. An

11

officer's use of force must therefore be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting Graham, 490 U.S. at 396). In Rodriguez, police arrested the plaintiff after a driver's license check mistakenly indicated that the plaintiff was subject to warrants for cocaine possession. 280 F.3d at 1344. The arresting officer "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the officer] was hurting him." Id. at 1351. The handcuffing aggravated a pre-existing injury in the plaintiff's arm, which ultimately had to be amputated below the elbow. Despite this tragic result, the Eleventh Circuit found that the arresting officer's use of force was reasonable and that the handcuffing technique he employed was a "relatively common and ordinarily accepted non-excessive way to detain an arrestee." Id. at 1351, 1353.

Similarly, in Secondo v. Campbell, 327 F. App'x 126, 132 (11th Cir. 2009) (unpublished), the Eleventh Circuit found that a routine handcuffing that resulted in significant injuries to both of the plaintiff's shoulders did not constitute excessive force. The plaintiff described the handcuffing as follows:

> My arm was twisted. Both my arms were twisted behind
> my back, pulled back in a very – in a forceful manner.
> Then my arms were kind of pushed up, at which point I
> felt pops in my shoulders, great discomfort in my
> shoulders. Cuffs were locked down on my wrists, and I
> felt a great deal of pain in my arms, looked down and
> saw my arms were swelling up. . . .

Id. at 128. The plaintiff alleged that he suffered "not only aggravation of a preexisting injury to his right shoulder, but also a fresh injury to his left shoulder," and that he incurred approximately $300,000 in medical expenses as a result of the incident. Id. at 129, 132. Even though the plaintiff's arrest was for a "relatively minor infraction," the Eleventh Circuit nevertheless found no evidence that the arresting officer "proceeded any differently than a reasonable officer would under similar circumstances." Id. at 132-33. The court thus found that the officer's use of force did not rise to the level of a constitutional violation. Id. at 133.

Here, the evidence viewed in the light most favorable to Plaintiff indicates that the method Lieutenant Jones employed to detain Plaintiff was no more egregious than that which the Eleventh Circuit found reasonable in Rodriguez and Secondo. According to Plaintiff, Jones grabbed Plaintiff's right arm, causing Plaintiff to drop his pen, and then grabbed his left arm, causing Plaintiff to fall forward onto the hood of Jones's police car. (Turner Dep. 35, 53.) Jones then proceeded to pull Plaintiff's arms behind his back and place him in handcuffs.

13

(Id. at 53.) Plaintiff's accounting describes a "common and ordinarily accepted non-excessive way to detain an arrestee." Rodriquez, 280 F.3d at 1351. Other than grabbing his arms and placing him in handcuffs, Lieutenant Jones did not "hit or touch" Plaintiff in any way. (Id. at 55-56.) And unlike the arresting officers in Rodriguez and Secondo, Jones did not even "jam [Plaintiff's] arms up [his] back." (Id. at 74.) There is simply no indication or allegation that Jones "handled [Plaintiff] in an objectively unreasonable manner." Secondo, 327 F. App'x at 133.

The fact that Plaintiff allegedly sustained a significant shoulder injury as a result of the handcuffing does not change the analysis. While it is true that the extent of a plaintiff's injury is a factor courts must consider in assessing reasonableness, Lee, 284 F.3d at 1198, that factor alone is not determinative. See Secondo, 327 F. App'x at 132-33 (holding that routine handcuffing did not amount to excessive force even though plaintiff sustained a significant new injury to his left shoulder as a result); see also Shultz v. Hall, 365 F. Supp. 2d 1218, 1226-30 (N.D. Fla. 2005) (finding police officer's use of force was not excessive even though "extent of injury" consideration weighed in plaintiff's favor). The ultimate test is whether "an objectively reasonable officer in the same situation could have believed the use of force was not

14

excessive." Brown, 2010 WL 2243877, at *7. Although Plaintiff's injury is unfortunate, Plaintiff simply has not shown that Lieutenant Jones "proceeded any differently than a reasonable officer would under similar circumstances." Secondo, 327 F. App'x at 133. Because Plaintiff has not established that Lieutenant Jones's use of force rises to the level of a constitutional violation, Jones is entitled to qualified immunity on Plaintiff's § 1983 excessive force claim.

Because Lieutenant Jones is entitled to qualified immunity on Plaintiff's false arrest and excessive force claims, Defendants are entitled to summary judgment on the § 1983 claims asserted against Jones.

III. PLAINTIFF'S § 1983 CLAIM AGAINST THE CITY OF BAXLEY

Plaintiff contends that the City of Baxley maintains a custom or policy that authorizes the use of force without legal cause, or has otherwise failed to adopt a policy prohibiting the use of force except under appropriate circumstances. Plaintiff also alleges that the city is liable for Lieutenant Jones's actions because the municipality continued to employ Jones despite knowledge of his prior misconduct. Because Plaintiff has established no constitutional deprivation under the alleged facts, however, the Court need not address Plaintiff's allegations regarding the City of Baxley's municipal liability

AO 72A
(Rev. 8/82)

under § 1983. See Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."). Accordingly, Defendants are also entitled to summary judgment on the § 1983 claims asserted against the City of Baxley.

IV. PLAINTIFF'S REMAINING STATE-LAW CLAIMS

Finally, Plaintiff asserts state-law claims for wrongful arrest, assault, and battery. Having determined that summary judgment in favor of Defendants is appropriate as to all federal claims over which this Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over the remaining state-law claims. See 28 U.S.C. § 1367(c)(3); see also Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (encouraging district courts to dismiss any remaining state-law claims where federal claims have been resolved prior to trial). Resolution of Plaintiff's state-law claims involves analysis of Georgia's doctrine of official immunity, which differs in several important respects from the federal doctrine of qualified immunity. Georgia courts are better suited to resolve such issues of Georgia law. Cf. Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000) (finding dismissal of state-law claims appropriate where such claims implicated Alabama's

AO 72A
(Rev. 8/82)

doctrine of discretionary function immunity). Moreover, since neither Party has briefed or argued the issue yet, nothing is lost in the way of judicial economy by dismissing Plaintiff's state-law claims without prejudice.

**CONCLUSION**

Defendants' motion for partial summary judgment regarding Plaintiff's federal-law claims under § 1983 is **GRANTED**. (Dkt. No. 16.) Plaintiff's remaining state-law claims are **DISMISSED without prejudice**.

**SO ORDERED**, this 25th day of August, 2010.

                        LISA GODBEY WOOD, CHIEF JUDGE
                        UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF GEORGIA