No. 10-14547

District Court Docket No.
2:09-cv-00013-LGW-JEG

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 23, 2011
JOHN LEY
CLERK

JAMES T. TURNER,

    Plaintiff - Appellant,

versus

JOHN T. JONES,
CITY OF BAXLEY,

    Defendants - Appellees.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit
By: _____
Deputy Clerk
Atlanta, Georgia

Appeal from the United States District Court for the
Southern District of Georgia

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: February 23, 2011
For the Court: John Ley, Clerk of Court
By: Nancy M. Gilman

ISSUED AS MANDATE
MAR 24 2011
U.S. COURT OF APPEALS
ATLANTA GA

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 10-14547
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 23, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:09-cv-00013-LGW-JEG

JAMES T. TURNER,

                    Plaintiff-Appellant,

versus

JOHN T. JONES,
CITY OF BAXLEY,

                    Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Georgia

(February 23, 2011)

Before BARKETT, MARCUS and COX, Circuit Judges.

PER CURIAM:

James T. Turner appeals the district court's grant of summary judgment to the defendants John T. Jones and the City of Baxley, Georgia on Turner's 42 U.S.C. §

1983 wrongful arrest and excessive force claims. After review, we affirm in part and reverse in part.

We review de novo the district court's grant of summary judgment. *Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) (citation omitted). "We apply the same legal standards as the district court and view all facts and reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citation omitted).

## I. BACKGROUND & PROCEDURAL HISTORY

In June 2007, around 6 p.m., Lieutenant John Jones of the City of Baxley Police Department initiated a traffic stop after observing James Turner make an improper lane change. After examining Turner's driver's license and vehicle registration, Jones issued Turner a traffic citation and told him that he had failed to use his turn signal before changing lanes. Turner does not challenge on this appeal either the legality of the initial stop or the legality of the traffic citation.[1] This case arises out of events that happened after Jones gave Turner the citation for improper lane change.

Throughout the traffic stop, both Jones and Turner were sarcastic with each other. When Jones handed Turner the citation, Turner made light of the traffic

---

[1] Turner testified in his deposition that, the day after the traffic stop, he discovered his turn signal did not work.

infraction, commenting that he had seen police officers fail to use their turn signals all the time. Jones told Turner to "take it up with the judge." (Dkt. 25-1 at 15.) Turner then asked Jones whether he was going to return his driver's licence. Jones responded, in a sarcastic tone, that he was going to keep the license, to which Turner replied, also sarcastically, that Jones was "about the nicest police officer I ever met." (*Id.*)

After giving Turner the citation, Jones turned his back and started walking to his police car. At the same time, Turner exited his own vehicle and followed behind Jones for several feet. As Turner was walking toward Jones's car, he asked Jones what his name was "so when I go to the judge I'll make sure I got the right man." (*Id.*) Turner had a pen and the citation in his hand when he asked for Jones's name. Jones, whose back was turned toward Turner at all times, did not answer. Jones reached the driver's door of his police car about the same time that Turner reached the front driver's side of the vehicle. Turner leaned over the hood of the car near the headlights on the driver's side, with a pen in his hand, ready to write Jones's name down. (*Id.* at 21, 23.) He was not facing toward Jones and he was not moving toward him. (Dkt. 18-3 at 6-7.) Seconds later, while Turner was still leaning on the police car in the writing position, Jones grabbed Turner's arms, pushed him against the hood of the police car, and placed him in handcuffs. Turner claims that these actions

3

caused him serious injuries, including an injury to his left shoulder that will require surgery.

Turner's grandson, Dylan Treat, was in Turner's car during the entire altercation. At some point during the arrest, Dylan called his mother (Turner's daughter), Teri Thornton, and told her there was a problem involving Turner and the police. Dylan also informed her of their location. When Thornton arrived on the scene, she recognized Lieutenant Jones, and asked him what was going on. Jones responded, "Your daddy's smart-ass mouth was the cause of this," or words to that effect. (Dkt. 18-3 at 4-5.) Jones did not tell Thornton that Turner was arrested because he posed a physical threat.

After arrest, Turner was transported to the Appling County Detention Center, where Jones issued Turner a citation for misdemeanor obstruction pursuant to O.C.G.A. § 16-10-24(a). That statute provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." Jones testified that he believed the arrest and citation were warranted because Turner hindered him from completing his duties and posed a threat by approaching him from behind with an object in his hand. The citation for misdemeanor obstruction that Jones wrote, however, does not mention anything about officer safety.

Turner filed this action against Jones and the City of Baxley pursuant to 42 U.S.C. § 1983, alleging claims against Jones for wrongful arrest and excessive force. The complaint also alleges that the City has a policy which authorized the use of force without legal cause, failed to adopt a policy prohibiting the use of excessive force, and improperly retained Jones with actual knowledge of repeated misconduct involving the deprivation of civil rights. Turner's complaint also includes state law claims for assault, battery, and false arrest.

The district court granted summary judgment in favor of Jones and the City on the § 1983 claims, and declined to exercise supplemental jurisdiction over the state law claims, dismissing them without prejudice. Turner appeals.

## II. DISCUSSION

### A. Claims against Lieutenant Jones

#### 1. Wrongful Arrest

Turner contends that Jones violated the Fourth Amendment by arresting him without probable cause. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (citation omitted). When determining whether an official is entitled to qualified immunity, however, the issue

is not actual probable cause, but only arguable probable cause. *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997). Arguable probable cause to arrest exists if objectively reasonable officers in the same circumstances and possessing the same knowledge as the officer effectuating the arrest could have believed that probable cause existed. *Case*, 555 F.3d at 1327. Because arguable probable cause looks to whether the arresting officer's actions were objectively reasonable, the officer's underlying intent or motivation is irrelevant. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). This standard acknowledges that "law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (alterations omitted) (citation omitted).

Whether an arresting officer possesses arguable probable cause depends on the elements of the alleged offense and the facts of the case. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007). Under Georgia law, a person commits the offense of misdemeanor obstruction if he "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties." O.C.G.A. § 16-10-24(a). The essential elements of misdemeanor obstruction under § 16-10-24(a) are "that the act constituting obstruction or hindering must be knowing and wilful, and that the officer must be lawfully discharging his official duties at the time of such

act." *Weidmann v. State*, 476 S.E.2d 18, 20 (Ga. Ct. App. 1996) (citation omitted).
A variety of conduct can satisfy the obstruction element of § 16-10-24(a).[2] But the conduct must rise to the level of knowing and willful opposition to the officer.[3]

Interpreted in his favor, the facts in this case show that Turner, while sarcastic with Jones throughout the stop, never threatened him, did not raise his voice, and did not use any profanity. Although frustrated by receiving a citation for failure to use his turn signal, Turner accepted the citation and complied with all of Jones's instructions. After receiving his citation, Turner exited his vehicle with pen and paper in hand, and asked Jones for his name so that he potentially could dispute the traffic citation in court. Jones did not answer this request and continued to walk

---

[2] For examples of conduct that satisfy the obstruction element of § 16-10-24(a), see *Draper v. Reynolds*, 369 F.3d 1270, 1277 (11th Cir. 2004) (belligerent refusal to comply with officer instructions); *Stryker v. State*, 677 S.E.2d 680, 682 (Ga. Ct. App. 2009) (telling friend to disobey an officer's order); *Leckie v. State*, 500 S.E.2d 627, 627-28 (Ga. Ct. App.1998) (unleashing string of profanities, obstinately refusing to go to jail, and purposefully turning away from officer to avoid being handcuffed); *Walker v. State*, 493 S.E.2d 193, 196 (Ga. Ct. App. 1997) (flight from arrest); *Duke v. State*, 423 S.E.2d 427, 428 (Ga. Ct. App. 1992) (lying with intent of misdirecting officer as to performance of official duties).

[3] Misdemeanor obstruction of an officer under O.C.G.A. § 16-10-24(a) does not require proof of forcible resistance or a threat of violence. *Stryker*, 677 S.E.2d at 682 & n.1. In *Stryker*, the Georgia court of appeals overruled a line of prior cases with implications to the contrary. *Id.* Thus, it is now clear that, under Georgia law, "verbal exchanges without threats of force and violence can authorize a conviction under [the misdemeanor obstruction] statute." *Duke*, 423 S.E.2d at 428.
That certainly does not mean, however, that *any* verbal exchange will qualify as misdemeanor obstruction. To be sure, the verbal exchange must still rise to the level of knowing and willful opposition to the officer.

toward his police car, with his back to Turner. Still waiting for an answer, Turner leaned over the hood of the police car near the headlights on the driver's side, with pen and paper in hand, ready to write Jones's name down. He was not facing toward Jones and he was not moving toward him.

Based on these facts, we find that the district court erred in concluding that Lieutenant Jones had arguable probable cause to arrest Turner for misdemeanor obstruction under O.C.G.A. § 16-10-24(a). The district court concluded that Turner's "willful act of positioning himself over the front of Jones's police car after an admittedly acrimonious exchange could have caused a reasonable officer in the same circumstances and possessing the same knowledge as Jones to believe that probable cause existed to arrest [Turner] for misdemeanor obstruction." (Dkt. 29 at 10.) We cannot agree. A reasonable police officer could not have interpreted Turner's leaning over the hood of the police car, in a position to write down Jones's name, as a knowing and willful act of hindrance or obstruction because Jones never told Turner that he was trying to leave or that Turner should stop leaning on the car; instead, Turner said nothing and immediately resorted to arrest. Turner cannot knowingly and willfully obstruct an officer when he did not violate any order or command of the officer. *See Connelly v. State*, 679 S.E.2d 790 792 (Ga. Ct. App. 2009) (no obstruction where defendant did not violate any order or command of officer). And,

8

Turner's use of sarcastic, non-threatening language, which included asking Jones for his name, does not make his leaning on the police car a willful and knowing act of obstruction. *See Reese v. Herbert*, 527 F.3d 1253, 1272-73 (11th Cir. 2008) (finding no arguable probable cause to arrest under § 16-10-24(a) based on plaintiff's calm and patient request to speak to officer's supervisor and request that law enforcement vehicles be moved); *Cf. Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006) (applying Florida law and holding that asking for officer's supervisor or for officer's badge number does not constitute obstruction of justice or disorderly conduct).

Nor do we agree that Jones had arguable probable cause to arrest Turner because of Jones's belief that he was in danger of bodily harm. Interpreted in his favor, the facts show that Turner was leaning over the hood of the police car near the headlights on the driver's side, with pen and paper in hand, ready to write Jones's name down. He was not facing or coming towards Jones, who was in the process of opening the driver's side door. A reasonable officer in Jones's position could not interpret Turner's leaning on the car with a pen in his hand as a threat to officer safety, especially considering that Turner had complied with all of Jones's orders throughout the altercation.

We therefore conclude that Jones is not entitled to summary judgment based on the defense of qualified immunity on Turner's claim that the arrest was

unsupported by probable cause. We reverse the district court's grant of summary judgment in favor of Jones on Turner's § 1983 claim for wrongful arrest.[4]

2. Excessive Force

Turner contends that Jones violated the Fourth Amendment by subjecting him to excessive force. Turner's excessive force claims appear to be based on two separate legal theories. Turner first contends that any force was excessive because the arrest was illegal. Alternatively, Turner argues that even if the arrest was legal, Jones used excessive force during that legal arrest. We discuss each theory in turn.[5]

In regard to the first theory, it is well-established that if no probable cause authorizes an arrest, *any* use of force to effectuate the unlawful arrest is a violation of the Fourth Amendment. *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1331-33 (11th Cir. 2006); *Reese*, 527 F.3d at 1272. This principle makes sense because, any time an arrest is illegal, "there is no basis for any threat or any use of force, and an excessive force claim would always arise but only collaterally from the illegal stop

---

[4] This is not to say that the defense of qualified immunity is out of this case. Lieutenant Jones's version of events differs substantially from Turner's version, and these facts will have to be sorted out at trial. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1488 (11th Cir. 1996) ("Where the defendant's pretrial motions are denied because there are genuine issues of fact that are determinative of the qualified immunity issue, special jury interrogatories may be used to resolve those factual issues.").

[5] The district court, having found the arrest to be supported by arguable probable cause, only addressed Turner's claim that Jones used excessive force during a legal arrest.

or arrest claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000). A plaintiff's damages for unlawful arrest, therefore, include damages for any injury, pain and suffering, and mental anguish caused by the force used to effect that false arrest, regardless of whether the force would have been reasonable or excessive had there been probable cause. *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995). We have just concluded that no probable cause authorized Turner's arrest for misdemeanor obstruction. Accordingly, to the extent Turner asserts that the force used during his arrest was excessive because the arrest was not supported by probable cause, this claim is part of the unlawful arrest claim. It is not a separate and discrete claim. *See Bashir*, 445 F.3d at 1332 ("[W]here an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim.") (citation omitted).

In addition to claiming that the use of force during his arrest was excessive because the arrest was not supported by probable cause, Turner also appears to assert a discrete claim that Jones's force was excessive even if his arrest was legal. Although we have determined that there are genuine issues of material fact as to whether arguable probable cause existed for his arrest, we also address whether,

assuming probable cause did exist, Turner is entitled to summary judgment based on qualified immunity as to Turner's discrete excessive force claim.[6]

We agree with the district court that the evidence viewed in the light most favorable to Turner shows that the force used by Lieutenant Jones was not excessive. According to Turner, Jones grabbed his arms, causing him to fall forward onto the hood of Jones's police car. Jones then pulled Turner's arms behind his back and placed him in handcuffs. As the district court concluded, this was a "common and ordinarily accepted non-excessive way to detain an arrestee." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). And, that Turner allegedly suffered a shoulder injury does not change the analysis. While the extent of a plaintiff's injury is a factor in analyzing the use of force, *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002), that factor alone is not determinative. Under the totality of the circumstances in this case, we cannot say that Jones's use of force effecting Turner's arrest was unnecessary and disproportionate. We therefore affirm the district court's grant of

---

[6] We address both legal theories underlying the excessive force claims because, if this case proceeds to trial, Turner's recovery for excessive force will depend on the jury's specific factual findings. If the jury, through special interrogatories, determines that the arrest was legal, then Turner cannot recover based on a claim for excessive force. As we discuss in the text, we agree with the district court that the amount of force used during the arrest did not violate the Fourth Amendment. If the jury determines that the arrest was unlawful, however, then Turner can recover for any damages that resulted from the unlawful arrest.

summary judgment in favor of Jones on the claim that Jones's use of force during a legal stop was excessive.

### B. Claims against City of Baxley

Turner claims that the City of Baxley maintains a custom or policy that authorizes the use of force without legal cause, or has otherwise failed to adopt a policy prohibiting the use of excessive force. Turner also claims that the City is liable for Jones's actions because the municipality continued to employ him despite knowledge of his prior misconduct. The district court entered summary judgment in favor of the City of Baxley on all of Turner's claims. The district court concluded that because neither Turner's arrest nor the use of force during arrest violated the Constitution, there was no need to address the claims against the City.

We "may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court." *Bonanni Ship Supply, Inc. v. United States*, 959 F.2d 1558, 1561 (11th Cir. 1992) (citation omitted). Although we have reversed the district court's finding of arguable probable cause, we nonetheless affirm the entry of summary judgment in favor of the City of Baxley, although on different grounds.

It is well established that a municipality cannot be held liable for a § 1983 violation based upon the theory of respondeat superior; it must have *itself* caused the

constitutional violation at issue. *Skop*, 485 F.3d at 1145 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 2037-38 (1978)). Thus, Turner can only succeed on his § 1983 claims against the City of Baxley by showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204-05 (1989)). We have emphasized that, to establish a policy or custom, "it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Turner has failed to show that the City had a policy or custom of deliberate indifference to his constitutional rights. Turner has produced no evidence of a "persistent and widespread practice" of the use of excessive force by officers of the City of Baxley Police Department. The only evidence that Turner has offered to establish the City's liability is that Jones had a verbal dispute with another officer over eight years ago. The report of the incident indicates that the police chief found fault with both Jones and the other officer and punished both of them with a written reprimand. This evidence in no way establishes that the City of Baxley had a policy or custom of using excessive force that caused a violation of Turner's Fourth

Amendment rights. The incident had nothing to do with the use of force, and the City's issuance of a written reprimand in advance of this lawsuit shows that Jones's actions were not in accordance with City policy. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410-411, 117 S. Ct. 1382, 1391 (1997) ("The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation."). Because Turner has produced no evidence that a custom or policy of the City of Baxley caused a violation of his Fourth Amendment rights, we affirm the district court's grant of summary judgment to the City.

## C. State Law Claims

The district court declined to exercise supplemental jurisdiction over Turner's state law claims because it had granted summary judgment to the defendants on all of Turner's federal law claims. Because we reverse the district court's grant of summary judgment to Lieutenant Jones on Turner's § 1983 claims for excessive force and wrongful arrest, we also vacate dismissal of the state law claims and instruct the district court to reconsider the question of whether to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Turner's state law claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

A True Copy Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia